**KIRKPATRICK & LOCKHART**
**NICHOLSON GRAHAM** LLP
55 Second Street, Suite 1700
San Francisco, California 94105-3493
Telephone: 415.882.8200
Facsimile: 415.882.8220
Raymond L. Gill (SBN 153529)
Geoffrey Davis (SBN 214692)
Email: Ray.Gill@klgates.com
Email: Geoff.Davis@klgates.com

Attorneys for Defendant Crane Co.

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### (San Francisco Division)

| | |
|---|---|
| RUSSELL C. ROBERTS, JR., <br><br> Plaintiff, <br><br> vs. <br><br> CRANE CO., et al., <br><br> Defendants. | Case No. 3:08-cv-01338 JL <br><br> (Superior Court, County of San Francisco, Case No. CGC-07-274248) <br><br> **DECLARATION OF GEOFFREY M. DAVIS, ESQ. IN SUPPORT OF CRANE CO.'S OPPOSITION TO MOTION FOR REMAND** <br><br> Hearing Date:   March 19, 2008 <br> Time:                 9:30 a.m. <br> Courtroom:       F, 5th Floor <br> Judge:   Chief Magistrate Judge James Larson |

I, Geoffrey M. Davis, declare:

1.     I am an attorney admitted to practice before this Court. I am an associate with the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP, counsel of record for Defendant Crane Co. I make this declaration in support of Crane Co.'s Opposition to Plaintiff's Motion to Remand. I am one of the trial attorneys for Crane Co. in the case of *Russell C. Roberts v. A.W. Chesterton Company, et al.*, San Francisco Superior Court Case No. CGC-07-274248, which was filed in that court on June 18, 2007. I make the statements in this Declaration on personal knowledge, and am competent so to testify.

---

1

DECLARATION OF GEOFFREY M. DAVIS IN SUPPORT OF
OPPOSITION TO MOTION FOR REMAND

1      2.     In the state court proceeding in the Superior Court of California for San Francisco

2  County, the case was assigned for jury trial to the Honorable Julie Tang. Prior to commencement of

3  trial, the parties met and conferred in person and via email concerning a number of issues, including a

4  list of the parties in the case to be included in the jury questionnaires. Counsel for plaintiff, Anthony

5  Vieira, Esq., provided a list of the parties in the case via email on January 28, 2008. Attached to Mr.

6  Vieira's email was a document in a word processing format, which listed as parties only Russell C.

7  Roberts, Jr., Buffalo Pumps, Inc., Carrier Corporation, Crane Co., Durabla Manufacturing Company,

8  The Goodyear Tire & Rubber Company, Gould's Pumps (IPG), Inc., and Metalclad Insulation

9  Corporation. A true and correct copy of the email of January 28, 2008, and the word processing

10  document that was attached thereto, are attached as Exhibit A hereto.

11      3.     A true and correct copy of excerpts of the Trial Transcript for February 11, 2008, as

12  referenced in Crane Co.'s Memorandum of Points and Authorities in Opposition to Motion to

13  Remand, is attached as Exhibit B hereto.

14      4.     A true and correct copy of excerpts of the Trial Transcript for February 14, 2008, as

15  referenced in Crane Co.'s Memorandum of Points and Authorities in Opposition to Motion to

16  Remand, is attached as Exhibit C hereto.

17      5.     A true and correct copy of excerpts of the Trial Transcript for February 22, 2008, as

18  referenced in Crane Co.'s Memorandum of Points and Authorities in Opposition to Motion to

19  Remand, is attached as Exhibit D hereto.

20      6.     A true and correct copy of excerpts of the Trial Transcript for March 7, 2008, as

21  referenced in Crane Co.'s Memorandum of Points and Authorities in Opposition to Motion to

22  Remand, is attached as Exhibit E hereto. Although the first page of the transcript shows the date

23  March 6, 2007, the transcript is, in fact, from March 7, 2008.

24      7.     A true and correct copy of the Economic Loss Report of Barry Ben-Zion, Ph.D. dated

25  November 19, 2007 is attached as Exhibit F hereto.

26  ///

27  ///

28

DECLARATION OF GEOFFREY M. DAVIS IN SUPPORT OF
OPPOSITION TO MOTION TO REMAND

1    8.    A true and correct copy of the Trial Transcript of March 6, 2008, testimony of Barry

2  Horn, M.D., p. 1558, lines 5-23 and p. 1560, line 20 – p. 1561, line 11, is attached as Exhibit G

3  hereto.

4    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

5  correct.

6    Dated: March 13, 2008

7                                                  Geoffrey M. Davis

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# EXHIBIT A TO THE MARCH 13, 2008

# DECLARATION OF GEOFFREY M. DAVIS

## Davis, Geoffrey M.

| | |
|---|---|
| **From:** | Barnes, Michele C. |
| **Sent:** | Monday, March 10, 2008 9:26 PM |
| **To:** | Davis, Geoffrey M.; Ramirez, Michael John |
| **Subject:** | FW: Russell Roberts - upupdated email distribution list |
| **Attachments:** | The Parties.docx; The Parties.doc |

E-mail from plaintiffs' counsel which identifies all of the parties in the action.

---

**From:** Anthony E. Vieira (AEV) [mailto:AVieira@paulandhanley.com]
**Sent:** Monday, January 28, 2008 10:45 PM
**To:** Deborah Smith; Barnes, Michele C.; Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com; jmurray@jacksonwallace.com; Oberg, Lisa; Berfield, Frank; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH); kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list

The parties attached

---

**From:** Deborah Smith [mailto:dasmith@gordonrees.com]
**Sent:** Monday, January 28, 2008 10:29 PM
**To:** Anthony E. Vieira (AEV); Barnes, Michele C.; Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com; jmurray@jacksonwallace.com; Oberg, Lisa; Berfield, Frank; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH); kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list

got it, thanks.  I also need a list of all parties - the exact name and spelling for the appendix

---

**From:** Anthony E. Vieira (AEV) [mailto:AVieira@paulandhanley.com]
**Sent:** Monday, January 28, 2008 10:26 PM
**To:** Deborah Smith; Barnes, Michele C.; Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com; jmurray@jacksonwallace.com; Oberg, Lisa; Berfield, Frank; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH); kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list

Experts list attached

---

**From:** Deborah Smith [mailto:dasmith@gordonrees.com]
**Sent:** Monday, January 28, 2008 10:12 PM
**To:** Anthony E. Vieira (AEV); Barnes, Michele C.; Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com; jmurray@jacksonwallace.com; Oberg, Lisa; Berfield, Frank; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH); kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list

I did not remember discussing that exact language in 11 but I am okay with it at this point.  Anyone disagree?  I missed 61, sorry about that.  Any other comments?

Tony, do you have a list of parties/experts to attach as the official appendix?

Who is making the 120 copies? Anyone have the resources to do that in the morning in time to get them to court?

---

**From:** Anthony E. Vieira (AEV) [mailto:AVieira@paulandhanley.com]
**Sent:** Monday, January 28, 2008 10:04 PM
**To:** Deborah Smith; Barnes, Michele C.; Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com; jmurray@jacksonwallace.com; Oberg, Lisa; Berfield, Frank; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH); kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list

Corrections to #11 and #61 attached (in red)
-Tony Vieira

---

**From:** Deborah Smith [mailto:dasmith@gordonrees.com]
**Sent:** Monday, January 28, 2008 9:52 PM
**To:** Barnes, Michele C.; Anthony E. Vieira (AEV); Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com; jmurray@jacksonwallace.com; Oberg, Lisa; Berfield, Frank; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH); kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list

darn, thought I caught all those. I will fix

---

**From:** Barnes, Michele C. [mailto:Michele.Barnes@klgates.com]
**Sent:** Monday, January 28, 2008 9:48 PM
**To:** Deborah Smith; Anthony E. Vieira (AEV); Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com; jmurray@jacksonwallace.com; Oberg, Lisa; Berfield, Frank; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH); kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list

I would recommend that no. 23 and no. 39 be updated with the "you, a family member or anyone close to you" language.

---

**From:** Deborah Smith [mailto:dasmith@gordonrees.com]
**Sent:** Monday, January 28, 2008 9:45 PM
**To:** Barnes, Michele C.; Anthony E. Vieira (AEV); Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com; jmurray@jacksonwallace.com; Oberg, Lisa; Berfield, Frank; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH); kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list
**Importance:** High

The proposed jury questionnaire is attached. Please review as it is late and I think I got all the changes, corrections and additions but there is no guarantee that I was perfect. Please let me know ASAP if there are any additional changes. The appendix still has to be completed but I wanted to get the substance to you as soon as possible. thanks

---

**From:** Barnes, Michele C. [mailto:Michele.Barnes@klgates.com]
**Sent:** Monday, January 28, 2008 8:05 PM
**To:** Deborah Smith; Anthony E. Vieira (AEV); Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com; jmurray@jacksonwallace.com; Oberg, Lisa; Berfield, Frank; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH); kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list

---

Finals revisions.

---

**From:** Deborah Smith [mailto:dasmith@gordonrees.com]
**Sent:** Monday, January 28, 2008 8:03 PM
**To:** Deborah Smith; Barnes, Michele C.; Anthony E. Vieira (AEV); Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com; jmurray@jacksonwallace.com; Oberg, Lisa; Berfield, Frank; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH); kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list

SECOND REVISED: Speak now or never.  see list below

---

**From:** Deborah Smith
**Sent:** Monday, January 28, 2008 7:54 PM
**To:** 'Barnes, Michele C.'; Anthony E. Vieira (AEV); Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com; jmurray@jacksonwallace.com; Oberg, Lisa; Berfield, Frank; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH); kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list

REVISED:

I have taken the list I rec'd from Tony earlier, added my experts and added those you just emailed me about.  Pls review again and if your expert is not on it, let us know.  I removed the judge and clerk from this email.  thanks

Barry Ben-Zion

Kirk Blackerby

Charles Blake

Frederick Boelter

Antone Brooks

Kenneth Cohen

Richard Cohen

James Crapo

Laura Fuchs Dolan

James Delaney

Allan Feingold, M.D.

Samuel Forman, M.D.

Frank Gomer

Michael Graham, M.D.

Patricia Hall

Samuel P. Hammar, M.D.

Barry Horn, M.D.

Admiral Roger Horne

Larry Luikonen

Thomas McCaffrey

Gerald Meyers, M.D.

Robert Morgan, M.D.

Margo Ogus

Donna Ringo

William Ringo

Admiral David Sargent

Capt. Richard Silloway

Allen Smith, M.D.

Dorsett Smith, M.D.

Robert Strode

Peter Valberg

---

**From:** Anthony E. Vieira (AEV) [mailto:AVieira@paulandhanley.com]
**Sent:** Monday, January 28, 2008 7:30 PM
**To:** Lee, Jennifer; Doyle, Peggy S.; tcrosby@crosbyrowell.com; lstorm@storm-law.com;
michele.barnes@klgates.com; jmurray@jacksonwallace.com; Deborah Smith; Oberg, Lisa; Berfield, Frank;
jtang@sftc.org; dfeinberg@sftc.org; Feng, Felicia; khollenbeck@storm-law.com; Kristen A. Herndon (KAH);
kvieira@vieiratriallaw.com; Tony Vieira
**Subject:** RE: Russell Roberts - upupdated email distribution list

Additional email update list

---

**From:** Lee, Jennifer [mailto:jelee@mckennalong.com]
**Sent:** Monday, January 28, 2008 5:30 PM
**To:** Doyle, Peggy S.; tcrosby@crosbyrowell.com; Anthony E. Vieira (AEV); lstorm@storm-law.com;
michele.barnes@klgates.com; jmurray@jacksonwallace.com; dasmith@gordonrees.com; Oberg, Lisa; Berfield,
Frank; jtang@sftc.org; dfeinberg@sftc.org; Feng, Felicia; khollenbeck@storm-law.com
**Subject:** RE: Russell Roberts - updated email distribution list
Judge Tang, Don and counsel - This email includes additional counsel for the email distribution list.
Thanks.

**Jennifer J. Lee | McKenna Long & Aldridge LLP**
101 California Street, 41st Floor | San Francisco, California 94111
Tel: 415.267.4126 | Fax: 415.267.4198

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

---

San Francisco * San Diego * Los Angeles * Sacramento * Orange County  * Las Vegas  * Portland * Houston *
Phoenix *  Dallas  *  New York  * Long Island  * Newark  *  Denver

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the
use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized
review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and
have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.
IRS CIRCULAR 230 DISCLOSURE
To ensure compliance with requirements by the IRS, we inform you that any U.S. tax advice contained in this communication (including any
attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction or matter addressed herein.

### GORDON & REES LLP
http://www.gordonrees.com

This electronic message contains information from the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP.
The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If
you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this
message is prohibited. If you have received this e-mail in error, please contact me at
Michele.Barnes@klgates.com.

The Parties

RUSSELL C. ROBERTS, JR.

BUFFALO PUMPS, INC.,

CARRIER CORPORATION,

CRANE CO.,

DURABLA MANUFACTURING COMPANY,

THE GOODYEAR TIRE & RUBBER COMPANY,

GOULD'S PUMPS (IPG), INC.,

METALCLAD INSULATION CORPORATION,

# EXHIBIT B TO THE MARCH 13, 2008
# DECLARATION OF GEOFFREY M. DAVIS

Page 1

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE JULIE TANG, JUDGE PRESIDING

DEPARTMENT NUMBER 303

---oOo---

RUSSELL ROBERTS,                          )
                                          )
          Plaintiff,                      )  Case No. 274248
                                          )  Jury Trial
Vs.                                       )
                                          )
A. W. CHESTERTON                          )
                                          )
          Defendants,                     )
_____)


Reporter's Transcript of Proceedings

Volume 1

Monday, February 11, 2008


APPEARANCES OF COUNSEL:

For Plaintiff:

     11

     811 West Seventh Street, Suite 206

     Los Angeles, CA   90017

     By:  ANTHONY E. VIEIRA,ESQ.

          STEPHEN HEALY,ESQ.


For Defendant Metalclad:

     McKenna & Cuneo

     101 California Street, 41st Floor

     San Francisco, CA 94111

     By:  FRANK K. BERFIELD,ESQ.

Page 2

```
 1    APPEARANCES OF COUNSEL:

 2

 3    For Defendant Crane Co.:

 4         Kirpatrick & Lockhart, Preston, Gates, Ellis, LLP
           55 Second Street, Suite 1700

 5         San Francisco,CA 94105-3493
           By:  GEOFF M. DAVIS,ESQ.

 6             MICHAEL JOHN RAMIREZ,ESQ.

 7

 8         For Defendant Carrier Corporatoin:

 9

           Tucker, Ellis & West, LLP

10         135 Main Street, Suite 700
           San Francisco, CA 94105

11         By:  EVAN NELSON,ESQ.
               LILLIAN C. MA,ESQ.

12

13         For Defendant Goodyear:

14

           Gordon & Rees

15         Embarcadero Center West, 20th Floor
           275 Battery Street

16         San Francisco, CA  94111
           By:  BOB RICH,ESQ.

17

18

19         For Defendant Durabla Manufacturing Company:

20

           Law Offices of Lucinda L. Storm

21         510 A Third Street
           San Francisco, CA 94107

22         By:  LUCINDA L. STORM,ESQ.
               KENNETH D. HOLLENBECK,ESQ.

23

24         For Defendant Gould Pumps:

25

           Crosby & Rowell, LLP

26         299 Third Street, Second Floor
           Oakland, CA  94607

27         By:  THOMAS C. CROSBY,ESQ.
      Reported by:  Patty Lee Hubble, CSR #3058

28
```

Page 3

1                               INDEX

2

3                                               Page   Vol

4    Opening Statement by Mr. Vieira             15     1

5    Opening Statement by Mr. Berfield           48     1

6    Opening Statement by Mr. Davis              81     1

7                         ---oOo---

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  you were deciding the case between individuals.

2      And the corporations that are parties in this lawsuit are

3  Metalclad, Crane, Goodyear, Carrier and Durabla.  There are five

4  separate corporations.  And when I use words like "person" or

5  "he" or "she" in these instructions to refer to a party, those

6  instructions also apply to each of these defendant corporations.

7      You must not consider whether any of the parties in this

8  case has insurance.  The presence or absence of insurance is

9  totally irrelevant.

10      You must decide this case based only on the law and the

11  evidence of the sworn testimony, documents, or anything else

12  that may be admitted in evidence.  You must decide what the

13  facts are in this case from the evidence you see or hear during

14  the trial.  You may not consider as evidence anything that you

15  see or hear when court is not in session, even something done or

16  said by one of the parties, attorneys or witnesses.

17      What the attorneys say during the trial is not evidence.  In

18  their opening statements and closing arguments, the attorneys

19  will talk to you about the law and the evidence.  What the

20  lawyers say may help you understand the law and the evidence,

21  but their statements and arguments are not evidence.

22      The attorneys' questions are not evidence.  Only the

23  witnesses' answers are evidence.

24      You should not think that something is true just because an

25  attorney's question suggests that it is true.  However, the

26  attorneys for both sides can agree that certain facts are true.

27  This agreement is called a stipulation.  No other proof is

28  needed, and you must accept those facts as true in this trial.

**EXHIBIT C TO THE MARCH 13, 2008**

**DECLARATION OF GEOFFREY M. DAVIS**

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE JULIE TANG, JUDGE PRESIDING

DEPARTMENT NUMBER 303

---oOo---

| | |
|---|---|
| RUSSELL ROBERTS, | ) |
| | ) |
| Plaintiff, | ) Case No. 274248 |
| | ) Jury Trial |
| Vs. | ) |
| | ) |
| A. W. CHESTERTON | ) |
| | ) |
| Defendants, | ) |

Reporter's Transcript of Proceedings

Volume  2

Thursday, February 14, 2008

APPEARANCES OF COUNSEL:

For Plaintiff:

    Paul, Hanley & Harley

    811 West Seventh Street, Suite 206

    Los Angeles, CA  90017

    By:  ANTHONY E. VIEIRA,ESQ.

        STEPHEN HEALY,ESQ.

For Defendant Metalclad:

    McKenna & Cuneo

    101 California Street, 41st Floor

    San Francisco, CA 94111

    By:  FRANK K. BERFIELD,ESQ.

Page 120

1    APPEARANCES OF COUNSEL:

2

3    For Defendant Crane Co.:

4         Kirpatrick & Lockhart, Preston, Gates, Ellis, LLP
          55 Second Street, Suite 1700

5         San Francisco,CA 94105-3493
          By:  GEOFF M. DAVIS,ESQ.

6              MICHAEL JOHN RAMIREZ,ESQ.

7

8     For Defendant Carrier Corporatoin:

9

          Tucker, Ellis & West, LLP

10        135 Main Street, Suite 700
          San Francisco, CA 94105

11        By:  EVAN NELSON,ESQ.
               LILLIAN C. MA,ESQ.

12

13     For Defendant Goodyear:

14

          Gordon & Rees

15        Embarcadero Center West, 20th Floor
          275 Battery Street

16        San Francisco, CA  94111
          By:  BOB RICH,ESQ.

17

18

19     For Defendant Durabla Manufacturing Company:

20

          Law Offices of Lucinda L. Storm

21        510 A Third Street
          San Francisco, CA 94107

22        By:  LUCINDA L. STORM,ESQ.

23

24

25

26

27

28    Reported by:  Patty Lee Hubble, CSR #3058

Page 156

1    present their case, and they're allowed to do that.

2        There were companies that have appeared in this case, but

3    they're no longer defendants in this case, and I want you not to

4    speculate as to why these parties are no longer in this case.

5    You should not consider this during deliberations.

6        All right.  So why don't we take a recess until 10:45.  And

7    remember the admonition:  Do not talk about the case among

8    yourselves or with anyone else.

9        And see you back here promptly at 10:45.

10       Alternate juror, why don't I see you for a second.  Thank

11   you very much.

12                    (Recess was taken at 10:24 A.M.)

13                   (The proceedings resumed at 10:52 A.M.)

14       THE COURT:  Very good.  Welcome back, ladies and gentlemen

15   of the jury.

16       Mr. Vieira, would you like to present your first witness.

17       MR. VIEIRA:  Yes, Your Honor.

18       The plaintiff would call Mr. Russell Roberts.

19       Mr. Roberts, why don't you come on up, sir.

20                    RUSSELL ROBERTS,

21    called as a witness for the Plaintiff, having been duly sworn,

22   testified as follows:

23       THE CLERK:  State and spell your name for the record.

24       THE WITNESS:  Russell Roberts.  Both names?

25       THE CLERK:  Yes.

26       THE WITNESS:  R-U-S-S-E-L-L, R-O-B-E-R-T-S.

27       THE CLERK:  Thank you.

28       THE COURT:  Good morning, Mr. Roberts.  How are you?

# EXHIBIT D TO THE MARCH 13, 2008

# DECLARATION OF GEOFFREY M. DAVIS

**2/25/2008  Russell Roberts v. AW Chesterton (Trial Volume 6, 2/22/08)**

```
1                    SUPERIOR COURT OF CALIFORNIA
2                       COUNTY OF SAN FRANCISCO
3          BEFORE THE HONORABLE JULIE TANG, JUDGE PRESIDING
4                       DEPARTMENT NUMBER 303
5                            ---oOo---
6   RUSSELL ROBERTS, JR.                     )
                                             )
7              Plaintiff,                     )  Case No. 274248
                                             )  Jury Trial
8   Vs.                                      )
                                             )
9   A.W. CHESTERTON, ET AL.                  )
                                             )
10             Defendants,                    )
    _____)
11
12
13
14              Reporters' Transcript of Proceedings
15                         Volume  6
16                  Friday, February 22, 2008
17
18
19  APPEARANCES OF COUNSEL:
20  For Plaintiff:
21       Paul, Hanley & Harley
         811 West Seventh Street, Suite 206
22       Los Angeles, CA  90017
         By:  ANTHONY E. VIEIRA, ESQ.
23            STEPHEN HEALY, ESQ.
24
25  For Defendant Metalclad:
26       McKenna, Long & Aldridge
         101 California Street, 41st Floor
27       San Francisco, California  94111
         By:  FRANK K. BERFIELD, ESQ.
28
```

1    Q.  Is that true in '76?

2       THE COURT:  I'm sorry, Counsel.  Are you starting a new

3    subject now?  Because we are closing in on the time that we are

4    to recess.  Maybe this is a good time to recess.

5       MR. HEALY:  This is a good time.

6       THE COURT:  Okay.  All right.  Then, Mr. Ay, we will expect

7    you to be back here on Monday, at nine o'clock.

8       MR. VIEIRA:  Your Honor, can we have a quick conversation

9    with Mr. Ay?

10      THE COURT:  Sure.

11      MR. VIEIRA:  Just on scheduling.  We've already discussed

12   things with these folks.

13      THE COURT:  You did?  Okay, that's fine.  But I need to also

14   instruct the jury about certain items.

15      First of all, as you know, Goodyear is no longer here.  They

16   are no longer a party to this action.  And do not question why

17   they're not here.  And do not consider them in your

18   deliberations.  And also we do have answers for you from Mr.

19   Hatfield from the day before yesterday.  We won't be able to

20   give it to you today.  We'll give that to you on Monday, okay.

21   All right.  Let's see what else.

22      All right.  So I think those are all the admonitions I'm

23   going to give you.  So have a nice weekend.  We will see you

24   back here on Monday, at nine o'clock.  And thank you all very

25   much for your indulgence.  I appreciate it.

26      Remember the admonition.  Keep an open mind.  And do not

27   talk about the case among yourselves or with anybody else.

28      Approach the bench.

**EXHIBIT E TO THE MARCH 13, 2008**

**DECLARATION OF GEOFFREY M. DAVIS**

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE JULIE TANG, JUDGE PRESIDING

DEPARTMENT NUMBER 303

---oOo---

| | |
|---|---|
| RUSSELL ROBERTS, JR. ) | |
| ) | |
| Plaintiff, ) | Case No. 274248 |
| ) | Jury Trial |
| vs. ) | |
| ) | |
| A.W. CHESTERTON, ET AL. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Reporter's Transcript of Proceedings

Volume 12

Thursday, March 6, 2008

APPEARANCES OF COUNSEL:

For Plaintiff:

    Paul, Hanley & Harley

    811 West Seventh Street, Suite 206

    Los Angeles, California  90017

    By:  ANTHONY E. VIEIRA, ESQ.

        STEPHEN HEALY, ESQ.

For Defendant Metalclad:

    McKenna, Long & Aldridge

    101 California Street, 41st Floor

    San Francisco, California  94111

    By:  FRANK K. BERFIELD, ESQ.

Page 1599

1    APPEARANCES OF COUNSEL:

2

3    For Defendant Crane Co.:

4         Kirkpatrick & Lockhart, Preston, Gates, Ellis, LLP

          55 Second Street, Suite 1700

5         San Francisco, California  94105-3493

          By:  GEOFF M. DAVIS, ESQ.

6              MICHAEL JOHN RAMIREZ, ESQ.

7

8       For Defendant Durabla Manufacturing Company:

9

          Law Offices of Lucinda L. Storm

10        510 A Third Street

          San Francisco, California  94107

11        By:  LUCINDA L. STORM, ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   Reported by:  Patty Lee Hubble, CSR No. 3058

27

28

Page 1600

1                        FRIDAY, MARCH 7, 2008

2                             ---oOo---

3    AFTERNOON SESSION                              1:30 p.m.

4       (The following proceedings were had in open court, out of

5    the presence of the jury.)

6       THE COURT:  We are on the record at this time, but outside

7    the presence of the jury.

8       I understand Metalclad has settled, but they will remain as

9    a part in this action and there is some conditions, too.

10      But Mr. Vieira, you probably --

11      MR. VIEIRA:  Yes.  I think the important thing, it's a

12   confidential settlement, Your Honor.

13      We have resolved with Metalclad and we will not be entering

14   any formal dismissal until we get the money, which we expect

15   will be in about 30 days.

16      THE COURT:  Thirty days.  But they will remain as a party in

17   this case --

18      MR. VIEIRA:  Yes, they won't be defending themselves.

19      THE COURT:  -- until the dismissal happens.

20      MR. VIEIRA:  Right.

21      THE COURT:  But they will not appear.

22      So I will explain to the jury that Metalclad will not appear

23   any more in this trial, and they're not to consider that nor

24   consider it in their deliberations.  That is what I should tell

25   them.

26      But usually I tell them that a certain corporation will no

27   longer be a party, but in this instance I will not say that.  I

28   will say no longer appear.

Page 1601

1    Congratulations, Mr. Berfield.

2    MR. BERFIELD:  I wish I could stay.

3    THE COURT:  Feels like you're enjoying the trial very much.

4    MR. BERFIELD:  I have been enjoying it.

5    THE COURT:  You want to continue to indulge the jury and

6    this Court.

7    MR. BERFIELD:  I want to give them a big hug.

8                         (Laughter.)

9                    (Discussion off the record.)

10    MR. DAVIS:  Could we stay on the record?

11    THE COURT:  Back on the record.

12    MR. DAVIS:  It's my understanding the plaintiffs are not

13    pursuing this case against Metalclad; is that correct?

14    THE COURT:  That's correct.

15    MR. DAVIS:  Metalclad, they are keeping them as a nominal

16    party, for whatever reason, but not pursuing the case.  And the

17    jury will be instructed that Metalclad is no longer a party in

18    this action.

19    THE COURT:  They will not be instructed they are no longer a

20    party.  They will be instructed that Metalclad will no longer

21    appear in this case.

22    MR. DAVIS:  Metalclad no longer has an interest in this

23    action.  They're not a real party in interest.  It's --

24    THE COURT:  I will not say that.  I will not say that they

25    are no longer a party.

26    It's a technical term but is a necessary term to -- in this

27    situation.

28    MR. DAVIS:  Two things -- two further things, Your Honor.

Page 1602

1   One is you ordered disclosure of all settlements to the parties.

2        THE COURT:  It was before -- no.  It was before this

3   settlement occurred.

4        And if there is any more issue with respect to disclosure,

5   I'm going to have you make a motion before Judge Robertson

6   because he knows about the settlement issues, much better than I

7   do.

8        MR. DAVIS:  You did order disclosure of all agreements to

9   agree, Mary Carter agreements, and everything.  I would like a

10  representation from these two lawyers that there was no

11  agreement of any kind prior to the signing of that order.

12       THE COURT:  I am not going to order them to put on the

13  record anything about the settlement at all.  This is really

14  outside of my purview.

15       If you want to do that, you can go to Judge Robertson, and

16  make that motion before him.

17       MR. DAVIS:  Because they're no longer pursuing the case

18  against Metalclad, the only two defendants they are pursuing the

19  case against are Durabla and Crane Co., and there is now

20  diversity and Crane Co. intends to remove this case to Federal

21  Court immediately, notwithstanding the fact that the remaining

22  are fraudulent or nominal parties.

23       THE COURT REPORTER:  "Not withstanding"  --

24       MR. DAVIS:  We do object to any further proceedings in this

25  case because we intend to file removal papers in the last two

26  hours.

27       MR. VIEIRA:  They're still a party to the action and the

28  dismissal will not be entered -- will not be filed until we get

Page 1603

1   the money, so --

2      MR. DAVIS:  They filed -- the dismissals are never filed

3   before they get their money.  However, they are not pursuing the

4   claim.  This trial is only about Crane Co., Durabla, and Russell

5   Roberts.  Complete diversity exists.  We are filing THE papers

6   in the next two hours or so regardless of the representation

7   that Metalclad remains a party.

8      THE COURT:  I will deny your motion at this time.

9      MR. DAVIS:  Okay.  If we proceed, we are proceeding over our

10  objections --

11     THE COURT:  You can do a writ, but this trial there will not

12  be a stay in the trial proceedings, we will continue, and you

13  can pursue whatever legal remedies --

14     MR. DAVIS:  Someone will be bringing a notice, filing a

15  notice of removal over this afternoon which will, under federal

16  law, divest you of further jurisdiction.

17     MR. VIEIRA:  Your Honor, if that happens --

18     MR. DAVIS:  So Proceeding further, Your Honor, is futile.  I

19  believe we should release the jury for the day and proceed

20  accordingly, because this is going to happen in the next couple

21  of hours.

22     And I understand your view that -- it's up to you if you

23  want to continue to proceed until you receive the notice of

24  filing of notice of removal, but the papers are prepared and

25  sitting in my office, somebody will go pick them up.

26     THE COURT:  I will continue with the proceeding until I

27  receive the order.

28     MR. DAVIS:  Just so it's clear, it's over our objection and

Page 1604

1    we will file a notice today, and this state court notice of

2    filing will be here in the next few hours.

3         THE COURT:  And I'm sure you would ask me to have -- you

4    would ask the Court to have a stay of the proceedings, but I

5    deny that at this time.

6         MR. DAVIS:  Your Honor, I don't believe there are any

7    options in that.  The filing of a notice of removal followed by

8    the filing of a notice of filing of notice of removal in the

9    state court divests the Court of jurisdiction.

10        THE COURT:  Why don't you brief me on that.

11        MR. DAVIS:  We will have someone bring authorities over to

12   the Court.

13        THE COURT:  All right.

14        MS. STORM:  Just for the record, Your Honor, Durabla joins

15   in the request that the Court denied for a representation from

16   the plaintiffs and from Metalclad that there was no settlement

17   agreement prior to Your Honor's order yesterday.

18        And I understand that Your Honor has denied the motion and

19   has invited us to go before Judge Robertson.  I just would like

20   the record to reflect that we also made that request.

21        THE COURT:  The decision is the same.

22        MS. STORM:  Thank you, Your Honor.

23        MR. BERFIELD:  I want to say on the record I will miss

24   everybody.  I will really enjoyed being here.

25        THE COURT:  We're going to miss you.

26        MR. BERFIELD:  Thank you very much, Your Honor.

27                    (Recess was taken at 1:42 PM.)

28

Page 1605

1          (The proceedings resumed at 2:19 P.M.)

2      (The following proceedings were had in open court, in the

3  presence of the jury.)

4      THE COURT:  I want the record to reflect all the jurors are

5  present, the attorneys are present.

6      Now, ladies and gentlemen, we just invited you to have lunch

7  today, because we're not going to have any hearing this

8  afternoon.

9      I'm going to call a recess of this trial at this time for at

10  least one week.

11      My clerk will contact you sometime next Monday to let you

12  know when you will be coming back.  And the earliest day you may

13  come back is on March the 17th, but this is just an estimate.

14  But I do want you to keep yourself available to this court, at

15  least for the time that we have said the trial will be ongoing.

16      And I don't want you to call, because we will call you.

17      Contact us if you want to give us new contact information.

18      All right.  Yes, Juror Number 5.

19      JUROR NO. 5:  Does this mean that the trial will extend out

20  into April?  Please say no.

21      THE COURT:  Maybe about a week or so, it's possible.

22      Let me know if it will be difficult for you.

23      JUROR NO. 5:  It is difficult because many of us, we still

24  have jobs that we're trying to do when we're not sitting here.

25      THE COURT:  I understand that.  And, believe me, I'm taking

26  all of that into consideration.  And I do have three alternates.

27      Yes, Juror Number 1.

28      JUROR NO. 1:  Would you say that again, what will happen?

Page 1606

1      THE COURT:  Yes, I will be happy to do that.

2      We will not be in session this afternoon.  That we know;

3  right?

4      Also, we will not be in session all next week.  So those of

5  you who are working, you probably have to go back to work next

6  week, all right.

7      We will call you sometime next Monday, maybe Tuesday, to let

8  you know when you will be needed again.  And we will give you a

9  specific date and time for you to come back.  And it will not be

10  anytime earlier than Monday, March the 17th; because next week

11  is the 10th, the earliest you will come back is the 17th.  It

12  may be later than that.

13      And I will definitely take into consideration what Juror

14  Number 5 has said.  And I do recognize that each and every one

15  of you have a lot of work and personal life to take care of, and

16  that you are not living just for this trial, but we are trying

17  to do the best we can.  And this is unavoidable, it is something

18  that has to happen.

19      So I just want to assure you, we are doing everything we can

20  to make sure that your time -- that you know that we know your

21  time is valuable and it's important.

22      All right.  So we will see you back here, hopefully maybe in

23  a week, and I will let you know.  My clerk will call you.

24      Now, do we have all your phone numbers and contact

25  information?  If it changes next week, you can call us to let us

26  know there has been a change; otherwise, we will call you and

27  reach you.

28      Yes, you have a hand up?

1      JUROR NO. 11:  Today counts like we are being here?

2      THE COURT:  Yes, absolutely.  You have been here.  You were

3  here.

4      JUROR NO. 11:  I need that for my work.

5      THE COURT:  Yes.  You are here today, for sure.

6      Yes, Juror Number 8.

7      JUROR NO. 7:  Number 7.

8      THE COURT:  Oh, yes.

9      JUROR NO. 7:  Should I ask the question?  Is Mr. Roberts --

10  is he okay?

11      THE COURT:  Oh, it has nothing to do with Mr. Roberts

12  personally.

13      JUROR NO. 7:  Okay.

14      THE COURT:  Nothing to do with him.  And don't even

15  speculate or try to guess what the situation is.

16      JUROR NO. 7:  Okay.  Okay.

17      THE COURT:  It's probably nothing that you can -- it's not

18  the reason you're thinking of.

19      JUROR NO. 7:  Okay.  Okay.

20      THE COURT:  And I'm pretty sure it's not the reason you're

21  thinking of.  So don't even go into the reason why this has to

22  happen, okay?

23      So recess, and it's unavoidable, and that's all we can tell

24  you.  So I will see you back here sometime later.

25      MR. VIEIRA:  Your Honor --

26      THE COURT:  Yes.

27      MR. VIEIRA:  Before you actually finally let everybody go,

28  could we have a quick moment of your time at sidebar?

Page 1608

1       THE COURT:  Yes.

2       MR. VIEIRA:  One last time.

3                           (Laughter.)

4               (Discussion at sidebar, not reported.)

5       THE COURT:  Okay.  So it's the same, nothing has changed.

6       And you know what, feel free to stay around and finish the

7    food if you want to.  Okay, the food is yours, so enjoy it.

8    Take it home if you want.

9       Maybe we will get some boxes for them to pack.

10                          (Laughter.)

11      THE COURT:  Thank you very much.

12      Attorneys, stick around.

13      MR. VIEIRA:  Yes, Your Honor.

14                       (Recess taken.)

15            (The proceedings resumed at 3:15 P.M.)

16   (The following proceedings were had in open court, out of the

17                    presence of the jury.)

18      THE COURT:  The record should reflect the jurors are not

19   present.  The plaintiffs are present, represented by Mr. Vieira,

20   and Defendant Crane Company is present.

21      MR. DAVIS:  Ms. Storm is still around.

22      MR. RAMIREZ:  I think she's in the cafeteria.

23      THE COURT:  You can make a special representation.

24      MR. RAMIREZ:  Sure.

25      THE COURT:  At this time I received a notice of removal

26   pursuant to 28 USC Section 1332 and 1441.

27      As such, this Court is divested of jurisdiction to continue

28   the trial.  I have recessed the jury.

Page 1609

1    I don't know, you know, the merits of this case.  It is a

2    decision that a federal court has to make.  I will not predict

3    what the outcome is, but I am concerned that this is happening

4    in the middle of a trial, and this legal maneuver is creating an

5    extreme inconvenience to the Court and to the jury.

6        I will seriously consider imposing sanctions against the

7    parties in this case, Crane Company, and Durabla, which has

8    joined, if this removal turns out to be without merit.  And

9    essentially what I will impose will be a serious one, and this

10   is to give the parties notice.

11       MR. DAVIS:  Thank you, Your Honor.

12       THE COURT:  Thank you very much.

13       I will see you back here Monday.  If you can give me a sense

14   of where things are at on Monday.

15       MR. VIEIRA:  This coming Monday?

16       THE COURT:  Yes, next Monday.

17       MR. DAVIS:  What time?

18       THE COURT:  See you back here on Monday.

19       MR. DAVIS:  What time?

20       THE COURT:  9:00 o'clock.

21       MR. DAVIS:  Our papers would be filed that -- I suspect

22   they're filing papers Monday or Tuesday.

23       MR. VIEIRA:  Yes, I suspect --

24       THE COURT:  But I still need a sense of where we are at so I

25   can let the jury know if they should come back at a certain

26   point in time.

27       MR. VIEIRA:  If it's okay with the Court, why don't we come

28   back on Tuesday instead.

Page 1610

1      THE COURT:  That's fine.  Can you come back on Tuesday.  By

2   that time, things will be settled.

3      MR. VIEIRA:  We will probably have our papers filed and we

4   can come in and tell you that, and tell you what we know at that

5   point.

6      THE COURT:  What the federal court has told you in terms of

7   the time schedule for arguments and things like that.

8      MR. DAVIS:  9:30?

9      THE COURT:  9:30 is fine, on Tuesday.

10     MR. VIEIRA:  All right, Your Honor.  Thanks.

11         (Whereupon, proceedings adjourned at 3:17 P.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page. 1611

1    State of California                    )

                                           )

2    City and County of San Francisco      )

3

4

5        I, Patty Lee Hubble, Reporter for the

6    Superior Court of the State of California, City and County of

7    San Francisco, do hereby certify:

8        That I was present at the time of the above proceedings;

9        That I took down in machine shorthand notes all proceedings

10   had and testimony given;

11       That I thereafter transcribed said shorthand notes with the

12   aid of a computer;

13       That the above and foregoing is a full, true, and correct

14   transcription of said shorthand notes, and a full, true and

15   correct transcript of all proceedings had and testimony taken;

16       That I am not a party to the action or related to a party

17   or counsel;

18       That I have no financial or other interest in the outcome

19   of the action.

20

21

22   Dated: March 7, 2008

23

24                        _____

25                        [Patty Lee Hubble, CSR No. 3058]

26

27

28

**EXHIBIT F TO THE MARCH 13, 2008**

**DECLARATION OF GEOFFREY M. DAVIS**

To: KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP From: Heather Brink    Tuesday, December 04, 2007 2:47 PM Page: 2 of 33
Subject: Roberts Jr. Russell C. #12241 ben-Zion report and  file

*Barry Ben-Zion, Ph.D.*
*Consulting Economist*
*3588 Kelsey Knolls*
*Santa Rosa, CA 95403*

# RUSSELL ROBERTS, Jr.

## ECONOMIC LOSS

### Personal Injury

Case 3:08-cv-01338-JL · Document 26-7 · Filed 03/13/2008 · Page 3 of 8
To: KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLFrom: Heather Brink          Tuesday, December 04, 2007 2:47 PM Page: 3 of 33
Subject: Roberts Jr. Russell C. #12241 ben-Zion report and  file

# *BARRY BEN-ZION, Ph.D.*
### *CONSULTING ECONOMIST*

*3588 KELSEY KNOLLS • SANTA ROSA, CA 95403 • TELEPHONE (707) 526-2236*
*FAX (707) 526-2258*

November 19, 2007

Mr. Dean A. Hanley
Attorney at Law
Paul, Hanley & Harley
1608 Fourth Street, Suite 300
Berkeley, CA 94710

Re: Russell Roberts, Jr. – Personal Injury

Dear Mr. Hanley:

We arrived at **$1,852,375** as the economic loss sustained by Mr. Russell Roberts as the result of his illness and anticipated premature death.

The total economic loss consists of three components: (1) the future loss of earning capacity, (2) the future loss of retirement income, and (3) the loss of home services. The sources of Mr. Roberts' retirement income is Civil Service Retirement System (CSRS) and social security. Each loss component is described separately.

Please do not hesitate to contact me if you have any questions concerning this report or any other aspect of this case.

Sincerely yours,

Barry Ben-Zion, Ph.D.

BBZ/ic

Enclosure

# SUMMARY OF ECONOMIC LOSS
## RUSSELL C. ROBERTS, Jr.

| | | |
|---|---:|---:|
| FUTURE LOSS OF EARNING CAPACITY | | 709,875 |
| | | |
| FUTURE LOSS OF RETIREMENT INCOME (APV) | | |
|     CSRS Retirement Income | 822,400 | |
|     Social Security Retirement Income | 106,500 | |
| TOTAL FUTURE LOSS OF RETIREMENT INCOME | | 928,900 |
| | | |
| LOSS OF HOME SERVICES | | |
|     PAST LOSS | 8,500 | |
|     FUTURE LOSS (PV) | 205,100 | |
| TOTAL LOSS OF HOME SERVICES | | 213,600 |
| | | |
| TOTAL ECONOMIC LOSS | | $1,852,375 |

Case 3:08-cv-01338-IL   Document 26-7   Filed 03/13/2008   Page 5 of 8

# VITAL INFORMATION
# RUSSELL C. ROBERTS, Jr.

| | |
|---|---|
| DATE OF BIRTH: | 09/24/1949 |
| DATE OF BEGINNING OF LOSS OF HOME SERVICES: | 02/01/2007 |
| DATE OF TRIAL: | 02/01/2008 |
| DATE OF ASSUMED DEATH: | 03/08/2008 |
| DATE END OF WORKLIFE EXPECTANCY: | 07/04/2015 |
| DATE AT AGE 66 (un-reduced social security retirement income): | 09/24/2015 |
| DATE END OF HEALTHY LIFE EXPECTANCY: | 07/08/2027 |
| DATE END OF LIFE EXPECTANCY: | 11/23/2029 |
| | |
| AGE AT BEGINNING OF LOSS OF HOME SERVICES: | 57.36 |
| AGE AT TRIAL: | 58.36 |
| AGE AT ASSUMED DEATH: | 58.46 |
| AGE END OF WORKLIFE EXPECTANCY: | 65.78 |
| AGE END OF HEALTHY LIFE EXPECTANCY: | 77.79 |
| AGE END OF LIFE EXPECTANCY: | 80.17 |
| | |
| YEARS FROM BEGINNING OF LOSS OF HOME SERVICES TO TRIAL: | 1.00 |
| YEARS FROM TRIAL TO END OF WORKLIFE EXPECTANCY: | 7.42 |
| YEARS FROM TRIAL TO AGE 66: | 7.65 |
| YEARS FROM TRIAL TO END OF HEALTHY LIFE EXPECTANCY: | 19.43 |
| YEARS FROM TRIAL TO END LIFE EXPECTANCY: | 21.81 |

*Sources:*
*Worklife Expectancy: Gary R. Skoog and James E. Ciecka, "Probability Mass Function for Years to*
*Final Separation from the Labor Force Induced by the Markov Model"*
*Journal of Forensic Economics, Vol. 16, No. 1 Winter 2003.*
*Male, High School Graduate*
*Healthy Life Expectancy: Expectancy Data, "Healthy Life Expectancy, 2002 Tables."*
*Shawnee Mission, Kansas, 2004.*
*Male, White*
*Life Expectancy: National Center for Health Statistics, "United States Life Tables, 2003"*
*Male, White*

## FACTS, CONSIDERATIONS, AND ASSUMPTIONS

1.    The total economic loss consists of three components: (1) Mr. Roberts' future loss of earning capacity, (2) his future loss of retirement income, and (3) the loss of home services.

**Future Loss of Earning Capacity – Present Value**

2.    After his retirement from his federal employment Mr. Roberts was planning to return to the labor force as an independent contractor or consultant and perform the type of work he had performed for the federal government, working for private employers.

3.    Mr. Roberts indicates in his deposition that he would have return to the labor force earning $100,000 per year (page 1134). For the purpose of this analysis it is assumed that absent his illness Mr. Roberts would have started his employment on 2/01/2008, earning $100,000 per year. By working for a non-governmental agency Mr. Roberts would have accrued credits toward a social security retirement income.

4.    The future loss of earning capacity is computed from 2/01/2008 to 9/24/2015, Mr. Roberts' 66th birthday, the date Mr. Roberts would have been eligible to begin receiving his un-reduced social security retirement income, a period of 7.65 years.

5.    Mr. Roberts' earning capacity is computed at $100,000 per year, expressed in today's dollars.

6.    The present value computation of the future loss is based on the assumption that the discount rate would exceed the increase in income by two percent per year, compounded.

**Future Loss of Retirement Income – Actuarial Present Value**

7.    The sources of Mr. Roberts' retirement income is Civil Service Retirement System (CSRS) and social security.

Page 3

To: KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP From: Heather Brink     Tuesday, December 04, 2007 2:49 PM Page: 7 of 33
Subject: Roberts Jr. Russell C. #12241 ben-Zion report and file

Case 3:08-cv-01328-JL     Document 26-7     Filed 03/13/2008     Page 7 of 8

CSRS Retirement Income

8.     Mr. Roberts is currently receiving CSRS retirement income of $4,197 per month. CSRS has
       a cost-of-living increase provision that is tied to the changes in the Consumer Price Index.
       This income is projected to increase to $4,294 per month as of 1/01/2008. The future loss
       of this income begins on the assumed date of Mr. Roberts' premature death.

9.     The actuarial present value of the future loss of CSRS retirement income is based on the
       2003 U.S. Life Expectancy Table mortality factors for white males at 5.5 percent interest,
       with an allowance for the system's cost-of-living increase provision, computed at 3 percent
       per year, compounded.

Social Security Retirement Income

10.    Had Mr. Roberts been able to work until age 66 on 9/24/2015, he would have accrued a
       social security retirement income. It is projected that this income would have been $1,278
       per month, payable upon retirement. The future loss of this income begins on Mr. Roberts'
       66th birthday.

11.    Social Security has a cost-of-living increase provision that is tied to the changes in the
       Consumer Price Index.

12.    The actuarial present value of the future loss of social security retirement income is based
       on the 2003 U.S. Life Expectancy Table mortality factors for white males at 5.5 percent
       interest, with an allowance for the system's cost-of-living increase provision, computed at
       3 percent per year, compounded.

13.    The future loss of social security retirement income is net of the contributions (at 6.2 percent
       of earnings) that Mr. Roberts would have had to make from his annual earnings during
       employment years.

**Loss of Home Services**

14.    The value of home services is based on the assumption that absent his illness Mr. Roberts
       would have been capable of providing home services commensurate with the services
       provided by the average male of his employment status, marital status, and age. The average
       value of home services is based on a study by Expectancy Data, *The Dollar Value of a Day*.

15.    The loss of home services begins as of 2/01/2007.  It is assumed that Mr. Roberts initially lost 50 percent of his ability to perform home services, and that he will continue to deteriorate and will be unable to perform any home services as of 2/01/2008.

16.    No loss of home services is computed for the last three years of Mr. Roberts' normal life expectancy.

17.    The present value computation is based on the assumption that the discount rate would exceed the increase in the value of home services by one percent per year, compounded.

**Other Losses**

18.    This report does not consider the past or future medical care costs or any other losses that may have been incurred.

**EXHIBIT G TO THE MARCH 13, 2008**

**DECLARATION OF GEOFFREY M. DAVIS**

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE JULIE TANG, JUDGE PRESIDING

DEPARTMENT NUMBER 303

---oOo---

| | |
|---|---|
| RUSSELL ROBERTS, JR. | ) |
| | ) |
| Plaintiff, | ) Case No. 274248 |
| | ) Jury Trial |
| vs. | ) |
| | ) |
| A.W. CHESTERTON, ET AL. | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Reporter's Transcript of Proceedings

Volume 12

Thursday, March 6, 2008

APPEARANCES OF COUNSEL:

For Plaintiff:

> Paul, Hanley & Harley
>
> 811 West Seventh Street, Suite 206
>
> Los Angeles, California   90017
>
> By:  ANTHONY E. VIEIRA, ESQ.
>
>      STEPHEN HEALY, ESQ.

For Defendant Metalclad:

> McKenna, Long & Aldridge
>
> 101 California Street, 41st Floor
>
> San Francisco, California   94111
>
> By:  FRANK K. BERFIELD, ESQ.

Page 1506

1    APPEARANCES OF COUNSEL:

2

3    For Defendant Crane Co.:

4        Kirkpatrick & Lockhart, Preston, Gates, Ellis, LLP
         55 Second Street, Suite 1700

5        San Francisco, California  94105-3493
         By:  GEOFF M. DAVIS, ESQ.

6             MICHAEL JOHN RAMIREZ, ESQ.

7

8        For Defendant Durabla Manufacturing Company:

9

         Law Offices of Lucinda L. Storm

10       510 A Third Street
         San Francisco, California  94107

11       By:  LUCINDA L. STORM, ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    Reported by:  Patty Lee Hubble, CSR No. 3058

27

28

Page 1507

1                                    INDEX

2

    PLAINTIFF'S WITNESSES                          PAGE   VOLUME
3

4   HORN, BARRY
5   Examination by Mr. Davis (402 Hearing)         1523   12
    Direct Examination by Mr. Vieira               1532   12
6   Cross-Examination by Mr. Berfield              1567   12
    Cross-Examination by Mr. Ramirez               1578   12
7   Redirect Examination by Mr. Vieira             1580   12
    Recross-Examination by Mr. Berfield            1585   12
8   Further Direct Examination by Mr. Vieira       1586   12
    Examination by Mr. Vieira (Re Jury Questions)  1587   12
9   Examination by Mr. Vieira (Re Jury Questions)  1592   12

10

11


                        E X H I B I T S
12

    PLAINTIFF'S EXHIBITS      DESCRIPTION      IDEN  EVID VOL.
13

    97                  Dr. Horn's exhibit     1569       12
14

15

16                      E X H I B I T S
17

    DEFENSE EXHIBITS        DESCRIPTION        IDEN  EVID VOL.
18

19  V                     Report by Dr. Horn   1568       12
                          dated October 22,
20                        2007

21

22

23

24

25

26

27

28

Page 1558

1    A.   That will be done to monitor the course of the disease for

2    the purpose of decision making.

3    Q.   And what about further hospitalizations?

4    A.   Oh, I can assure you, he will wind up in the hospital again.

5    Q.   All right.   Now, just taking the past medical procedures

6    that he's had -- and by the way, have you looked at records in

7    this case?

8    A.   Yes.

9    Q.   What have you looked at?

10   A.   I looked at his records, I have actually seen bills for most

11   of his care.

12   Q.   And taking that into account, do you have an opinion as to

13   the reasonable cost of his reasonably necessary medical care

14   that he received as a result of developing mesothelioma?

15   A.   To date?

16   Q.   To date.

17   A.   Yes.

18   Q.   What is that?

19   A.   $350,000.

20   Q.   What is that based on?

21   A.   That is based upon the actual bills that I have seen for the

22   bulk of his care and what I expect it will be for the care I

23   have not seen, the bills which I have not seen as yet.

24   Q.   The bills you have not seen as yet are what?

25   A.   I have not seen the bills for his radiation therapy at

26   Swedish Medical Center in December, and it may have percolate

27   into January, I'm not sure.   And he's also subsequently had a CT

28   scan and a PET scan.

Page 1559

1    Q.   Okay.  With respect to those items for which you haven't

2    seen the bills, the radiation, Swedish, the CT scan and PET

3    scan, do you have an opinion as to what they would cost?

4    A.   The radiation at Swedish Medical Center is $50,000, and the

5    PET scan is close to $5,000.  The CT scan is about $2,000.

6    Q.   How do you know the radiation is about 50,000?

7    A.   I have seen bills from Swedish Medical Center for people who

8    received therapeutic radiation for this disease before.

9    Q.   How do you know the CT scan or PET scans are the numbers you

10   gave us?

11   A.   Same answer, I have seen bills from Washington for those

12   procedures.

13   Q.   All right.  We're talking about the topic of chemotherapy.

14   Is there anything uniform about its likely cost, irrespective of

15   what area you're getting your treatment?

16   A.   Yes.

17   Q.   Explain that.

18   A.   Certain costs are the same irrespective of what area of the

19   country you're in.  Let's say you're getting chemotherapy, the

20   cost of the chemotherapeutic acts the same nationally.  It

21   doesn't matter if you are getting your care in Mississippi, in

22   New York or San Francisco or Berkeley or Tacoma or Seattle.  The

23   cost of the chemotherapy is the same.

24       If you're going to get a PET scan done, GE's PET scanners

25   cost the same, whether you are in Seattle or you're in San

26   Francisco or you're in Mississippi or in New York or wherever.

27       So you have to cost-account out the cost of that machine, so

28   the costs of this are the same.  The radioisotope that you use

Page 1560

1   in order to do that PET scan costs the same irrespective of what

2   area of the country you are in.

3   Q.  Is there anything about the costs of care that might be

4   distinct as between San Francisco and Los Angeles or Seattle or

5   Tacoma?

6   A.  Yes.

7   Q.  Explain that to us.

8   A.  If you get hospitalized in Tacoma, the costs of a given

9   hospitalization in Tacoma will be less than the hospitals in

10  San Francisco or in Berkeley, or in Los Angeles.

11      So you get admitted because you get dehydrated from

12  chemotherapy, and you wind up, you go into shock and you need

13  treatment, the costs in Tacoma would be less than here.

14      If you need home healthcare, the home healthcare costs in

15  San Francisco is more than the home healthcare costs would be in

16  Tacoma.

17  Q.  Have you taken all those things into account in developing

18  the opinion that you have provided us?

19  A.  Yes, that's right, I have.

20  Q.  Okay.  Now, in terms of reasonable costs of reasonably

21  necessary medical care necessitated by the mesothelioma, do you

22  have an opinion as to what that will be?

23  A.  In the future?

24  Q.  In the future.

25  A.  It's a wide range.  I can provide you that range.

26  Q.  All right.  Go ahead.

27  A.  His future costs of care are variable, depending upon how

28  long he lives, what treatment regimen he chooses, and whether he

Page 1561

1    responds to that regimen or not.

2         In your experience, taking into account the fact that I

3    think it's unlikely he will be alive more than a year from now,

4    there is a limit to what I think that cost would be.  So I put

5    future costs up to $200,000, excluding heroic care.  I'm

6    expecting this will not include heroic care.  And whether he

7    would reach $200,000 would be a function of how long he lives

8    and whether he responded to treatment or not.

9    Q.  If he lives a year, it's likely to be on the order of

10   $200,000?

11   A.  Close to 200,000.

12   Q.  Dr. Horn, by the way, did you take a look at any of the

13   chest x-rays or CT scans for the purpose of looking at the

14   plaque formations that he had on his pleura?

15   A.  These CTs are not good for that purpose that I have here.

16   But I have a CT, I have -- I was provided with an abdominal CT

17   scan which was done in 2005 which includes cuts through the

18   lower chest, which demonstrate plaque.

19        MR. VIEIRA:  Okay.  Your Honor, with the Court's permission

20   I would like to show the jurors that as well.

21        THE COURT:  Any objection?

22        MR. BERFIELD:  No objection.

23        MR. RAMIREZ:  No objection.

24        MR. VIEIRA:  Your Honor, I don't know if this is an

25   appropriate point to take the morning break.

26        THE COURT:  Why don't we take a 15-minute morning break and

27   come back at five minutes of 11:00.

28        Remember the admonition:  Do not talk about the case among